## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| LEONARD R. TALTON,<br>    *Petitioner*,<br><br>    v.<br><br>COMMISSIONER OF CORRECTION,<br>    *Respondent*. | No. 3:22-cv-384 (VAB) |

### RULING AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

Leonard Talton ("Petitioner"), tried and convicted of murder and other crimes in a Connecticut state court, is now serving his 60-year prison sentence. He has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction on four grounds.

For the following reasons, the petition for writ of habeas corpus is **DENIED**.

## I.   BACKGROUND

Mr. Talton's conviction arose from a fatal shooting in 1997. The circumstances of the shooting, as laid out by the Appellate Court of Connecticut in Talton's direct appeal, include the following.

On March 22, 1997, the shooting victim and his friend, Tacumah Grear, were standing in a New Haven parking lot when two men approached. *See State v. Talton*, 779 A.2d 166, 169 (Conn. App. Ct. 2001). One of them was wearing a camouflage mask and the other wore a hood pulled tightly over his head. *Ibid.* Grear recognized them as Talton, wearing the hood, and Talton's brother, Snowden; Grear had witnessed a dispute between Snowden and the victim the day before. *Ibid.*

One of the men told Grear to leave so that he could "handle [his] business," which Grear

understood to mean shoot the victim. *Ibid.* Grear refused and instead stepped between the men

and the victim. *Ibid.* There was a struggle, during which the hooded man took out a gun and

prepared to fire it. *Ibid.* The victim saw the gun and pushed Grear to the ground, out of the line

of fire. *Ibid.* After falling to the ground, Grear saw the hooded man point the gun at the victim

and fire it. *Id.* at 169-70. The two men then fled. *Id.* at 170.

When the police arrived and questioned Grear, he chose not to identify the men. *Ibid.* But

a few days later, he changed his mind. *Ibid.* The police recorded a statement from Grear, in

which he identified Talton as the shooter and Snowden as the accomplice. *Ibid.*

At trial, Grear was the state's primary witness. *Ibid.* His testimony was consistent with

his statement to the police, except that he refused to identify Talton as the shooter. *Ibid.* The state

then introduced Grear's earlier statement. *Ibid.* To rehabilitate his credibility, the state examined

Grear about his refusal to testify, and he explained that he feared retaliation because he,

Snowden, and the victim were "in the game," implying that they were members of a drug-selling

gang. *Ibid.* Talton objected that this testimony was irrelevant and prejudicial, but the trial court

overruled the objection. *Ibid.*

Grear also testified that, since the victim's death, Grear's own brother had been shot and

killed, as had the person who killed his brother. *Id.* at 172. Talton again objected on relevance

and prejudice grounds, and the court again overruled, agreeing with the state that this testimony

constituted an additional reason why Grear had been afraid to testify. *Ibid.* The court also issued

a limiting instruction to the jury emphasizing that the state was not claiming the defendant had

any part in these deaths. *Ibid.*

The Appellate Court of Connecticut affirmed Mr. Talton's conviction. *Id.* at 173. He then

petitioned for certification to appeal to the Connecticut Supreme Court and was denied. *See State*

2

*v. Talton*, 782 A.2d 1250 (Conn. 2001).

While his direct appeal was pending and after, Mr. Talton filed three overlapping state habeas petitions, all of which were unsuccessful.[1] The Connecticut Supreme Court denied his latest petition for certification on November 30, 2021. *See Talton v. Comm'r of Corr.*, 263 A.3d 822 (Conn. 2021).

On March 15, 2022, Mr. Talton filed this petition for a federal writ of habeas corpus.[2]

## II.    STANDARD OF REVIEW

Federal courts have very limited authority to overturn state court criminal convictions. A state court defendant who seeks relief by way of a federal petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 must show that his state court conviction was rendered by means of a very clear violation of federal law—*i.e.*, that the state court's adjudication of his claims "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or that it "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)-(2); *see also Chrysler v. Guiney*, 806 F.3d 104, 118 (2d Cir. 2015) (reviewing governing standard).[3] A sentenced state

---

[1] Talton's first state habeas petition was filed in 1999 and denied in 2003. *See Talton v. Comm'r of Corr.*, 855 A.2d 1051 (Conn. Super. Ct. 2003); *Talton v. Comm'r of Corr.*, 854 A.2d 764 (Conn. App. Ct. 2004) (affirming denial) (*per curiam*); *Talton v. Comm'r of Corr.*, 859 A.2d 585 (Conn. 2004) (denying petition for certification). His second petition was filed in January 2004 (prior to the denial of certification in his first petition) and denied in 2013. *See Talton v. Warden, State Prison*, 2013 WL 3388915 (Conn. Super. Ct. 2013); *Talton v. Comm'r of Corr.*, 110 A.3d 434 (Conn. App. Ct. 2015) (dismissing appeal); *Talton v. Comm'r of Corr.*, 111 A.3d 881 (Conn. 2015) (denying petition for certification). Talton's third state habeas petition was denied in 2018, and the appeal dismissed in 2021. *See Talton v. Warden*, 2018 WL 1734728 (Conn. Super. Ct. 2018); *Talton v. Comm'r of Corr.*, 259 A.3d 53 (Conn. App. Ct. 2021) (dismissing appeal) (*per curiam*); *Talton v. Comm'r of Corr.*, 263 A.3d 8225 (Conn. 2021) (denying petition for certification).

[2] Doc. #1 at 9, 25, 27, 29.

[3] Unless otherwise noted and for ease of reading, this ruling omits all internal quotations, brackets, and derivative citations for all quotations from cases.

prisoner who alleges that he is in state custody in violation of federal law may seek relief in a federal court under an application for a writ of habeas corpus under 28 U.S.C. § 2254(a).

This is a "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). As the Supreme Court has explained, "[w]hen reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong." *Woods v. Donald*, 575 U.S. 312, 316 (2015) (*per curiam*).

## III.    DISCUSSION

Mr. Talton raises four grounds for relief: (1) error by the district court when it admitted Grear's testimony concerning the murders of Grear's brother and his murderer; (2) error by the district court when it allowed Department of Corrections officers to sit directly behind Talton (at an unspecified proceeding); (3) ineffective assistance of trial counsel and various unspecified errors by the trial court; and (4) prosecutorial misconduct in soliciting falsehoods concerning the deaths of Grear's brother and his killer.

The Court will address each of these issues in turn.

### A.    The Allegedly Irrelevant and Prejudicial Testimony Claim

"As a threshold matter, evidentiary rulings are generally not cognizable on habeas review." *Moore v. Johnson*, 2024 WL 1704728, at *7 (E.D.N.Y. 2024) (citing *Taylor v. Curry*, 708 F.2d 886, 891 (2d Cir. 1983)); *see also Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) ("[S]tate trial court evidentiary rulings generally are not a basis for habeas relief."). If the evidentiary ruling at issue "was correct pursuant to a state evidentiary rule," federal court review

4

is limited to the question of whether "the evidentiary rule is arbitrary or disproportionate to the purposes it is designed to serve." *Scrimo v. Lee*, 935 F.3d 103, 115 (2d Cir. 2019).

Mr. Talton argues that it was error for the trial court to admit Grear's testimony concerning the deaths of his brother and his brother's killer because the testimony was irrelevant and prejudicial. He adds that Grear's brother was, in fact, alive when this testimony was given.

The Court disagrees.

Under Connecticut law, "[t]he general rule is that threats against witnesses are not relevant and are thus inadmissible as evidence unless the defendant is linked in some way to the making of the threats." *State v. Walker*, 571 A.2d 686, 689 (Conn. 1990). But there exists an exception to this rule "where the evidence of threats is offered not to prove the guilt of the accused but rather to explain a witness'[s] prior inconsistent statement." *Id.* at 690.

Here, the trial court admitted this testimony because the state offered it for the express purpose of rehabilitating Grear's credibility; indeed, the testimony supported the notion that he recanted his prior statement because he had a generalized fear of retaliation. *See Talton*, 779 A.2d at 172. The trial court also issued a limiting instruction informing the jury that "it is not the position or claim of the state that the shooting of this witness' brother or the person who shot his brother, that this defendant or anybody connected with him or his family had anything to do with those shootings. That is not the state's claim." *Talton*, 779 A.2d at 172, n.6. Although the testimony did not concern a specific threat made to Grear, it pertained to his perception of being under threat if he testified. Thus, the evidence was properly offered under Connecticut law: for the purpose of explaining the witness's prior inconsistent statement.

Connecticut law on this issue is not arbitrary or disproportionate, so as to "infringe[] upon a weighty interest of the accused," especially in light of the limiting instruction. *Hawkins v. Costello*, 460 F.3d 238, 244 (2d Cir. 2006).

Accordingly, under the highly deferential standard applicable here, Mr. Talton has failed to show that admission of Grear's testimony offended federal law, and the claim on this ground will be denied.

### B.  The DOC Officials in the Courtroom Claim

Talton next claims that "department of correctional [sic] officers sat directly behind defendant."[4] He does not specify when or where this occurred, but the Appellate Court, in its ruling denying his direct appeal, noted that the claim pertained to the presence of "uniformed correction officers . . . present during jury selection." *Talton*, 779 A.2d at 173. The Appellate Court declined to address the merits of his claim because the record was inadequate. *Ibid.*

The habeas court denied the claim again—styled this time as an ineffective assistance claim for failure to create an adequate record concerning the officers' proximity—because Talton failed to present evidence that his counsel could have rectified the issue. *Talton v. Warden*, 2013 WL 3388915, at *1-2. On appeal, the court affirmed that Talton, "having been present during jury selection and the trial, was in a position to give a detailed account" of the placement and behavior of the officers but "provided nothing more than what was stated by the court" and so failed to meet his burden of proof. *Talton*, 110 A.3d at 439-40. The court also noted that, under Connecticut law, the mere presence of security personnel is not inherently prejudicial. *Id.* at 440.

---

[4] Doc. #1 at 25.

None of these rulings contravenes clearly established federal law. On the contrary, the Supreme Court has held that the operative question on a claim of an inherently prejudicial courtroom arrangement is whether it created "an unacceptable risk" of "impermissible factors coming into play." *Holbrook v. Flynn*, 475 U.S. 560, 570 (1986). No such risk was shown here.

Accordingly, Mr. Talton's claim on this ground will be denied.

### C.  The Miscellaneous Claims

Mr. Talton's third ground consists of five discrete claims: 1) "trial court erred in its conclusion, representation, failed to demonstrate prejudice from representation"; 2) "trial counsel failed to investigate, prepare, and present alibi defense"; 3) "trial counsel failed to investigate and present ballistics expert"; 4) "trial court erred in relying on hearsay evidence in its judgment"; 5) "trial counsel failed to present an alibi defense [which] stop[ped] petitioner's right to testify."[5]

As to the two claims relating to the state court, the Court will not consider them because they consist only of conclusory allegations and fail to allege any facts amenable to review. "Rule 2(c) of the Rules Governing Habeas Corpus Cases . . . . instructs the petitioner to specify all the grounds for relief available to him and to state the facts supporting each ground." *Mayle v. Felix*, 545 U.S. 644, 649 (2005); *see Abreu v. Lempke*, 2013 WL 3475304, at *12 (N.D.N.Y. 2013) ("While [petitioner] cited case law and stated conclusory allegations against the respondent, [petitioner] does not assert any facts 'allowing for the application of a legal principle involving custody in violation of the constitution or laws or treaties of the United States.'") (quoting *U.S. ex rel. Holes v. Mancusi*, 423 F.2d 1137, 1142 (2d Cir. 1970)); *Liner v. Abrams*, 1988 WL 64819,

---

[5] *Id.* at 27.

at *1 (S.D.N.Y. 1988) (declining to issue certificate of probable cause because "[t]he petition fails to indicate any state of facts upon which to base a valid claim of violation of constitutional rights").

Mr. Talton next makes two claims concerning his counsel's failure to present an alibi defense. The first was raised in his initial state habeas petition. There, the court applied the well-established *Strickland* test for ineffective assistance of counsel. *See Talton*, 855 A.2d at 1054-57; *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under *Strickland*, a plaintiff bringing an ineffective assistance of counsel claim "must demonstrate both that counsel's performance was deficient and that the deficient performance prejudiced the defense." *United States v. Ortiz*, 100 F.4th 112, 116 (2d Cir. 2024) (quoting *Waiters v. Lee*, 857 F.3d 466, 477 (2d Cir. 2017)).

The habeas court engaged in an extensive analysis of the reasoning and decisions made by Mr. Talton's counsel. It observed, for example, that "[a] failed alibi defense can be catastrophic for the defense." *Talton*, 855 A.2d at 1056. In Mr. Talton's case, his attorney considered the fact that his alibi was defective and that the defense could plant the question of Talton's whereabouts by poking holes in the state's case, rather than taking the all-or-nothing risk that an alibi defense entails. *Id.* at 1056-57. The court concluded that this choice was "a wise tactical move," and that counsel's performance was not deficient. *Id.* at 1056-57. The appellate court affirmed this reasoning. *See Talton*, 854 A.2d at 765.

Mr. Talton has not shown, nor can he, that the state court contravened or unreasonably applied federal law. "Actions and/or omissions taken by counsel for strategic purposes generally do not constitute ineffective assistance of counsel." *Matthews v. Raymond*, 562 F. App'x 43, 44 (2d Cir. 2014) (quoting *Gibbons v. Savage*, 555 F.3d 112, 122 (2d Cir. 2009)); *see Strickland*, 466 U.S. at 690-91. The court's review is thus "doubly deferential," in that "[w]e take a highly

deferential look at counsel's performance through the deferential lens of § 2254(d)." *Pinholster*, 563 U.S. at 190.

Within these strict constraints, there is not a sufficient basis to rule that Mr. Talton's counsel turned in a deficient performance. Even if the Court could, there must be "defer[ence] to the judgment of the State court so long as 'fairminded jurists could disagree' as to the proper application of precedent." *Matthews*, 562 F. App'x at 45 (quoting *Harrington v. Richter*, 562 U.S. 86, 101 (2011)). Here, there is at least ample room for disagreement. As a result, Mr. Talton's claim on this ground will be denied.

Mr. Talton's second, related alibi ground is that his counsel's failure to raise the defense infringed his right to testify in his own defense. But Mr. Talton failed to fully exhaust this claim in state court, as required by federal law. *See* 28 U.S.C. § 2254(b)(1)(A); *Jackson v. Conway*, 763 F.3d 115, 133 (2d Cir. 2014) ("To provide the state with the first opportunity to consider and correct alleged violations of its prisoners' constitutional rights, a state prisoner is required to exhaust all of his available state remedies before a federal court can consider his habeas application." (citing 28 U.S.C. § 2254(b)(1)(A); *Carvajal v. Artus*, 633 F.3d 94, 104 (2d Cir. 2011)). The fact that a petitioner has initially presented a claim to a state trial court does not ordinarily mean that the petitioner has fully exhausted state court remedies. A claim has not been fully exhausted until its essential factual and legal premises have been presented to the highest state court capable of reviewing it. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, we conclude that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review

process."); *Jackson*, 763 F.3d at 133 ("[Exhaustion] requires that the prisoner 'fairly present' his constitutional claim to the state courts, which he accomplishes 'by presenting the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it.'" (citing *Rosa v. McCray*, 396 F.3d 210, 217 (2d Cir. 2005)). In this case, Mr. Talton raised the claim in his first state habeas petition and subsequent habeas appeal but abandoned it in his petition to the Connecticut Supreme Court.[6]

A court may excuse a failure to exhaust "if 'there is no opportunity to obtain redress in state court or if the corrective process is so clearly deficient to render futile any effort to obtain relief.'" *Robles v. Faneuff*, 2016 WL 7441065, at *2 (D. Conn. 2016) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*)). Mr. Talton seeks such excuse here, arguing that "[t]hrough not fault of his own, the attorney abbreviated and reduced the language." Doc. #29 at 5. But, as courts in this Circuit have repeatedly held, claims regarding an attorney's failure to include certain grounds for relief should themselves be raised in state courts. *See Baltas v. Comm'r of Corr.*, 2022 WL 17737778, at *5 (D. Conn. 2022) (declining to excuse a failure to exhaust based on petitioner's claim that "his attorneys would not assert the claims" because "[j]udges in this District have held that a petitioner has available means to exhaust state court remedies on a claim that was not included on direct appeal or in a previous habeas corpus action because the petitioner may file a state habeas petition"); *Abrams v. Comm'r of Corr.*, 2019 WL 919581, at *10 (D. Conn. 2019) (holding that petitioner could exhaust his ineffective assistance of trial counsel claim through a state habeas petition alleging that habeas counsel was ineffective for failing to raise the trial counsel claims). Given that "Connecticut does not limit the number of

---

[6] *See* Doc. #25-1.

10

habeas corpus actions an inmate may file," Mr. Talton "has an available avenue to exhaust his state court remedies on his unexhausted claims." *Baltas*, 2022 WL 17737778, at *5. As a result, his failure to exhaust will not be excused, and the petition will be denied on this ground.

Mr. Talton's final ineffective assistance claim rests on his counsel's failure to present ballistics evidence. He raised this issue in his first state habeas petition. Although the trial and appellate courts that reviewed the petition did not directly address this ground, the trial court did hold that "[a]ll other allegations are similarly without basis . . . [Talton's counsel] did a good job in defending the petitioner and was an effective trial counsel." *Talton*, 855 A.2d at 1058. "Where a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Harrington*, 562 U.S at 98. Mr. Talton has not met this burden. As discussed above, trial strategy decisions, without more, do not constitute defective performance, and Mr. Talton has failed to explain why this instance departs from the general rule. As a result, the petition will be denied on this ground

Accordingly, all of Mr. Talton's claims on these miscellaneous issues will be denied.

### D.  The Prosecutorial Misconduct Claim

The fourth ground concerns prosecutorial misconduct; Talton claims that the state knowingly solicited false evidence because, at the time Grear testified concerning his brother's murder, both his brother and his brother's killer were still alive.[7] He brought this claim in his third habeas petition, where the Court ruled that it was procedurally defaulted. *See Talton*, 2018 WL 1734728, at *4. "Where a defendant has procedurally defaulted a claim by failing to raise it

---

[7] Doc. #1 at 29.

on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either cause and actual prejudice or that he is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998); *see Gupta v. United States*, 913 F.3d 81, 84 (2d Cir. 2019) (same). Talton failed to make this showing, both before the state court and here. He moves the Court to excuse the default but does not explain why he could not have raised this issue in his direct appeal.[8] As a result, he has failed to show cause for the default.

Accordingly, the petition will be denied on this ground.

## CONCLUSION

For the reasons set forth above, the petition for writ of habeas corpus is **DENIED**.

Because Talton has not made a substantial showing that this ruling denies his constitutional rights, no certificate of appealability shall issue. *See* 28 U.S.C. § 2253(c)(2).

The Clerk of Court shall enter judgment in favor the respondent and close this case.

**SO ORDERED**.

Dated at New Haven this 3rd day of July 2025.

/s/  Victor A. Bolden
Victor A. Bolden
United States District Judge

---

[8] Doc. #20 at 32-33.